[Crim. No. 405.   Third Appellate District.—August 6, 1917.]

## THE PEOPLE, Respondent, v. ROBERT CHARLIE, Appellant.

CRIMINAL LAW—MISCONDUCT OF DISTRICT ATTORNEY—IMPUTATION OF MANUFACTURED DEFENSE—MATTER NOT REVIEWABLE ON APPEAL.—In a criminal prosecution, misconduct of the district attorney in his address to the jury in making remarks not warranted by the record, the plain implication of which was that defendant's counsel had manufactured a spurious case of self-defense, cannot be inquired into on appeal, where no objection was made to the remarks at the time they were made or attention of the trial court called thereto.

ID.—APPEAL—OBJECTIONABLE REMARKS BY DISTRICT ATTORNEY.—An objection to unwarranted remarks by the district attorney, in the course of his argument to the jury in a criminal case, where such remarks are of a character that any damaging effect thereof on the rights of the accused may be obviated by timely and proper instruction by the court to the jury that they were not at liberty to consider such remarks in their deliberations upon their verdict, will not be reviewed or considered by the appellate court unless the remarks so complained of were objected to at the time they were made, and the power of the court to correct the abuse then invoked.

ID.—ASSAULT WITH DEADLY WEAPON—GUILT OF DEFENDANT—INSTRUCTION.—In a prosecution for assault with a deadly weapon under an information charging that the assault was willfully, unlawfully and feloniously committed, an instruction that, if the jury believed that the defendant "as charged in the information" committed the assault, they should find him guilty, is not unfair to the defendant as obligating the jury to find the defendant guilty notwithstanding his plea of self-defense.

ID.—LAW OF SELF-DEFENSE—HARMLESS INSTRUCTION.—In such a prosecution an instruction as to the law of self-defense awkwardly phrased

and not accurately stating the law of self-defense, is harmless, where it is clear therefrom that the court intended to say to the jury that the assailant would be justified in acting on appearances, or apparent danger of losing life, or suffering great bodily injury at the hands of the assaulted party, and elsewhere in its charge submitted to the jury a full and complete statement of the law of self-defense.

Id.—Guilt of Defendant Regardless of Conduct of Assaulted Party —Harmless Instruction.—Where the jury was correctly instructed on the law of self-defense, error in instructing them that if the defendant sought a quarrel with the assaulted party, the defendant should be found guilty regardless of whether or not the assaulted party attempted to assault the defendant, is harmless.

APPEAL from a judgment of the Superior Court of Modoc County.   Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

J. T. Sharp, and J. Sidney Henderson, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The information in this case charges that the defendant, on the eighteenth day of March, 1917, in the county of Modoc, committed upon the person of one West Steele an assault with a deadly weapon.   The jury found the defendant guilty of the assault as so charged, and he appeals to this court from the judgment of conviction.

Both the defendant and the prosecuting witness, West Steele, are Indians.   It appears that the defendant claimed an indebtedness due him from Steele in the sum of two dollars, the former claiming that the latter, prior to the date of the trouble resulting in the assault, had borrowed that amount from him.   On the day of the assault, the defendant had intended going to the town of Likely, in Modoc County, but, before starting to said town, and accompanied by two or three other Indians, he called at the home of West Steele, a short distance from Alturas, for the purpose of collecting the money he claimed Steele owed him.   On entering the house the defendant asked Steele for the money, whereupon the latter declared that he owed the defendant nothing.   An altercation followed, resulting in a fist fight, the defendant being the aggressor in the assault, having struck the first

blow. After for a brief time fighting in the house, during the progress of which an old Indian woman, named Katie Pete, attempted to separate the men and so put an end to the fight, the defendant stepped out of the house on to the front porch, saying to Steele as he did so that there was not room enough in the house in which to fight, and "you come outside and we will fight it out," Steele took off his overcoat and started to follow the defendant to the outside, but the old woman above named still held on to him and so attempted to prevent him from going outside. Steele, however, succeeded in getting out of the door and on to the porch. Just as he stepped out of the door, the defendant struck him with a knife on the side of the head, near the left eye, inflicting an ugly wound of an inch or more in length and which penetrated to the bone. Steele was attended by a physician, who took several stitches in the wound and otherwise treated it. The defendant was, on the day of the assault, arrested by the sheriff. A large pocket knife, which, when open, was seven inches in length from the end of the handle to that of the blade, was taken by the officer from the person of the defendant. Upon the blade of the knife were blood stains. The defendant admitted to the sheriff that he cut Steele with said knife. The defendant was to some extent intoxicated at the time of the affray.

The above recital of the facts is founded upon the testimony introduced by the people.

The defendant and his witnesses gave an entirely different version of the difficulty, so far as the vital facts were concerned. The accused testified that Steele was the aggressor; that he (Steele) struck the first blow in the house; that, while he (defendant) himself saw nothing in the hand of Steele as the latter emerged from the house and appeared on the porch, an Indian named Griffith, who followed Steele out on the porch, yelled to defendant that Steele had a knife in his hand; that Steele, almost simultaneously with the warning so given, struck at the defendant, but the blow failed of its mark; that, thereupon, believing that Steele had a knife in his hand, he (defendant) struck the former with a knife, which he had hastily taken from his pocket and opened when warned that Steele was likewise armed.

It is, of course, apparent that a pronounced conflict in the evidence exists, and obviously the familiar rule as to such con-

flicts must govern this court in considering the questions of fact thus arising. The jury, as is well understood, had the right to accept the testimony of the people and reject that of the defendant. This they obviously did, and their conclusion is conclusive upon us. While it is not for this court, under such a state of the record as to the proof as is presented here, to analyze or otherwise consider the testimony for the purpose of justifying the jury's verdict, it may nevertheless be suggested that it is not to be wondered that the jury should have rejected the testimony of the defendant, since it appears that, on having his attention called at the trial to a radical variance between his testimony given there and that given at his preliminary hearing upon vitally important facts, he admitted that he lied and gave false testimony when testifying before the magistrate.

But the points which the defendant the more seriously and earnestly urges upon us involve the alleged misconduct of the district attorney in his address to the jury, and certain instructions embraced within the court's charge to the jury. These propositions will now be considered.

1. While the defendant testified at the preliminary hearing of the charge that, as Steele stepped out of the door on to the porch, the witness, Griffith, addressing the defendant, exclaimed, "Look out," he did not at said hearing testify that Griffith at the time mentioned also warned him that Steele had a knife in his hand. The district attorney, on cross-examination of the defendant at the trial, asked him why, if it were true, as he declared it to be at the trial, that Griffith warned him, at the time Steele stepped out on the porch, that the latter had a knife in his hand, he did not testify to that fact at the preliminary examination, to which the defendant returned the explanation: "I know I didn't have a lawyer in the justice's court. And I made a mistake there."

The district attorney, in commenting upon the disparity between the defendant's testimony before the magistrate and that given by him at the trial regarding the matter mentioned, said: "That was defendant's testimony down before the magistrate, and if it was not the truth it came pretty near being. That was before he had any attorneys to tell him it was not true. When he got attorneys, they said to him, 'We can make a fine self-defense case out of this, so you say that

you saw the knife; you must tell that all the time, and we will put Oakley [meaning the witness Griffith] on the stand to corroborate you, and we have got a good case.' "

The defendant here contends that the above language was entirely without justification from the record, and that its effect was to inspire in the jury great prejudice against the defense set up by him. The remarks were not warranted by anything found in the record, and, of course, the plain implication from said language is that the defendant's counsel had manufactured for him a spurious case of self-defense, an imputation which should never be made before a jury in any case, much less in a criminal case, in which a person's liberty is at stake, unless there is clear evidence brought properly into the record justifying it. But we are not authorized to inquire into the merits of the objection made to said remarks because the record does not disclose that such objection was taken at the trial, or that the matter was, at the time the remarks were made, called to the attention of the trial court. Since the remarks complained of were wholly beyond justification by the record, and, indeed, so plainly so that the jury themselves must have at once perceived it, we think that any possible prejudice which might have followed therefrom could have been corrected or destroyed by an order of the court striking them out and an admonition to the jury to disregard them. It has been repeatedly held in this. as well as in other jurisdictions, that an objection to unwarranted and objectionable remarks by the district attorney, in the course of his argument to the jury in a criminal case, where such remarks are of a character that any damaging effect thereof on the rights of the accused may be obviated by timely and proper instruction by the court to the jury that they were not at liberty to consider such remarks in their deliberations upon their verdict, will not be reviewed or considered by the appellate court unless the remarks so complained of have been objected to at the time they were made and the power of the court to correct the abuse then invoked. (*People* v. *Ah Fook,* 64 Cal. 380, 383, [1 Pac. 347] ; *People* v. *Beaver,* 83 Cal. 420, [23 Pac. 321] ; *People* v. *Frigerio,* 107 Cal. 153, [40 Pac. 107] ; *People* v. *Kramer,* 117 Cal. 647, 651, [49 Pac. 842] ; *People* v. *Brittan,* 118 Cal. 409, 412, [50 Pac. 664] ; *People* v. *Owens,* 132 Cal. 469, 471, [64 Pac. 770] ; *People* v. *Shears,* 133 Cal. 154, 159, [65 Pac. 295] ; *People*

*v. Ruef,* 14 Cal. App. 576, 619, [114 Pac. 48, 54]; *People* v. *Amer,* 8 Cal. App. 137, 143, [96 Pac. 401]; *People* v. *Stein,* 23 Cal. App. 108, 118, [137 Pac. 271]; *People* v. *Ye Foo,* 4 Cal. App. 730, [89 Pac. 450]; *Horn* v. *State,* 12 Wyo. 162, [73 Pac. 705].)

But the defendant complains that the district attorney, in the course of his argument, further transcended the record, and in so doing prejudiced the jury against him when he made the following observations: "These Indians are a little bit shrewder than we think. For example, they cannot compel Indians over twenty-one years of age to go to the Bidwell School, and there is not an Indian boy running around here but what claims he is over twenty-one years of age, even when you know positively they cannot be over ten. You would be surprised, but if you ask some Indian with a little bit of a boy how old the boy is you would get the reply, 'Why he is twenty-two years old.' It is always twenty-two years old, to keep from sending the boy over to school. I have taken particular notice, and where I have a pretty good idea of their age, it is often amusing to have them claim to be twenty-two years old when they were only about twelve or fourteen. Another thing is that they never get any older than twenty two. Wild Bill here, will get on that stand and swear that he is about twenty-two or twenty-three years old. It has been done here in court so many times that I know just how it is."

Counsel for the defendant objected to said remarks and requested the court to instruct the district attorney to confine himself to the record. The court in reply stated that it was of the opinion "that it is proper argument; it is an illustration is all."

The remarks thus objected to and above quoted were made by the prosecutor in substantiation of a declaration previously made by him in his argument that the Indians in Modoc County were bright people, and that if the jury were to acquit the defendant under the evidence, "these Indians" will then believe that they can repeat the same kind of conduct and "get by with it." In other words, the prosecutor, by the observations in question, appears to have adopted that method of impressing upon the jury the importance of the verdict in its effect, in the one way or the other, upon the Indians generally of Modoc County; that being people of more than ordinary shrewdness for red men of their tribal

characteristics, they would receive a verdict of guilty as a severe warning against the use of intoxicating liquor, to which nearly all their internecine difficulties are primarily attributable, while, on the other hand, a verdict of acquittal would probably have the effect of encouraging them in the reckless use of intoxicants, with the result that serious affrays of the character of the one culminating in this prosecution might become common among them.    While there was no evidential justification for the remarks—particularly the statement as to the disposition of the Indians to falsify or misrepresent their ages to avoid compulsory attendance at the school maintained for the education of their youth—we cannot say that, in making them, as an illustration of the point he was then pressing upon the attention of the jury, the district attorney went so far afield in legitimate argument as to have thus seriously prejudiced the rights of the accused.

The Indians of the California tribes are an inferior race, generally live by themselves, and as to whose doings entirely among and wholly affecting themselves, however serious at times may be the consequences, there is not infrequently a considerable degree of indifference manifested by the white men.    It is probable, therefore, that the remarks complained of were made solely for the purpose of impressing upon the jury the proposition that the charge preferred and the evidence presented by the people in support thereof should receive as serious and earnest consideration as they would be given if the defendant and his victim were not Indians. Moreover, in themselves or taken alone, the remarks were harmless—indeed, viewed without regard to the connection in which they were used, they were meaningless, so far as this case was concerned, and could have exerted no influence one way or the other in bringing about a verdict.    Besides, they were general in their application, having reference to all the Indians of that locality and not to the defendant alone.    At all events, in view of the evidence, we cannot persuade ourselves that the jury were unduly influenced by them.

2. Complaint is made of the following given instruction: "The court instructs you that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Robert Charlie, on or about the eighteenth day of March, 1917, as charged in the information in this case, committed

an assault upon the person of West Steele with a deadly weapon, you should find the defendant guilty.''

Challenging the legal soundness of said instruction, as applied to this case, counsel say: ''The instruction is so framed that the jury was bound to find the defendant guilty if they followed it, and which in our opinion they did do, for the reason that there was no contention on the part of the defense that the defendant did not assault the complaining witness, but that the defense was that he was justified, and, therefore, for the instruction to be fair to the defendant, and in conformity to the law as applied to the evidence of the case, the instruction should have been so framed as to make the qualification that 'unless the act was done in self-defense.' ''

A simple reply to the criticism thus aimed at the instruction is that it states that if the jury believe from the evidence that the defendant committed the assault, etc., *''as charged in the information,''* and that the information alleges that the assault therein charged was ''willfully, unlawfully, and feloniously'' committed. Obviously, if the evidence was such as to convince the jury beyond a reasonable doubt that the assault was committed as so charged, then there was nothing left for the jury to do but to convict the accused, notwithstanding his plea of self-defense and the evidence produced by him in support thereof. If, in other words, the defendant willfully, unlawfully, and feloniously committed the assault, as the information charges, then, manifestly, there could be no support for the plea of self-defense. Moreover, the court elsewhere in its charge instructed the jury fully and clearly upon the law of self-defense as it is laid down in the code.

3. The following instruction, given by the court, is criticised as not involving a correct exposition of the principle of law sought to be stated thereby: ''To justify the using of a deadly weapon in self-defense, it must appear that the danger which such person was in was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the use of such weapon was absolutely necessary, and it must appear that the person on whom he used such weapon was the assailant, or that the person resorting to the use of such weapon had really and in good faith declined further struggle before he made use of said weapon.''

It is said of that instruction that it contains an erroneous statement of the law of self-defense in that it declares that the danger to the person using the weapon was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, "the use of such weapon was *absolutely necessary*," whereas, the law is that the circumstances upon which the person using the weapon is justified in acting are such only as are "sufficient to excite the fears of a reasonable person," and the party making the assault or doing the killing "must have acted under the influence of such fears alone." (Pen. Code, sec. 198.)

The instruction is awkwardly phrased and does not accurately state the law of self-defense, although it is clear therefrom that the court thereby intended to say to the jury that the assailant would be justified in acting upon appearances or apparent danger of losing his life or suffering great bodily injury at the hands of the assaulted party. But, as before stated, the court elsewhere in its charge submitted to the jury a full and complete statement of our law of self-defense, and we cannot under such circumstances justly declare that the shortcomings of the above instruction resulted in prejudice to the accused.

4. The next assignment of error involves an attack upon the legal soundness of the following given instruction: "The court instructs you that one who has sought a quarrel with another with a design to force a deadly issue cannot avail himself of a plea of self-defense in using a deadly weapon in such quarrel. And if you believe from the evidence in this case beyond a reasonable doubt that the defendant sought a quarrel with West Steele with a deadly weapon, you should find the defendant guilty, regardless of whether or not you believe that said West Steele attempted to assault said defendant with a deadly weapon in such quarrel."

The only objection urged against said instruction is to that portion thereof which reads: " . . . that the defendant sought a quarrel with West Steele with a deadly weapon," the criticism thereof in effect being that the mere seeking of a quarrel with another with a deadly weapon does not constitute an assault with a deadly weapon. A literal view of the instruction well justifies the criticism. This fault in the phraseology of the instruction, however, might be reconciled with the rational view that thus the court intended to refer to one

who has sought a quarrel and in the quarrel assaulted another with a deadly weapon. But, in view of the clear statement by the court elsewhere in its charge of the law of self-defense, we do not believe the accused could have suffered injury or prejudice from the instruction, particularly the portion which is specifically criticised by the defendant. In fact, as to all the instructions, the accuracy of which in stating the principles of law thus sought to be given to the jury is challenged by the defendant, we cannot justly hold, after a review and consideration of the entire record, that from the errors so occurring a miscarriage of justice will follow an affirmance of the judgment. (Const., art VI, sec. 4½.)

Obediently to the foregoing views, the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.