[No. 10,434.—Department No. 2.]

## PEOPLE *v.* MILES.

MURDER—INSTRUCTION—DEFINITION.— Upon the trial of an indictment for murder, the Court, in effect, instructed the jury that if the deceased was shot by the defendant from behind, and that the defendant at the time of the shooting was concealed behind a fence, and that there were no words, demonstrations, or hostile acts, at that immediate time, on the part of the deceased, and that the deceased was unconscious that the defendant was so concealed until he was shot, the defendant was guilty of murder. *Held,* that the instruction was erroneous.

ID.—ID.—ID. — LYING IN WAIT. — The term "concealed" is not synonymous with "lying in wait." If a person conceals himself *for the purpose of shooting another unawares,* he is *lying in wait;* but a person may, while concealed, shoot another without committing the crime of murder.

ID.—ID.—SELF-DEFENSE.—When a man exercises his right of self-defense, he must be understood to act on the facts as they appear to him; and if, without fault or carelessness, he is misled concerning them, and defends himself correctly according to what he supposes the facts to be, he is justifiable, though the facts are in truth otherwise, and he really has no occasion for the extreme measure.

APPEAL from a judgment of conviction, and from an order denying a new trial, in the Thirteenth District Court, County of Tulare. CAMPBELL, J.

The facts are stated in the opinion.

*Brown & Daggett,* for Appellant.

*Attorney-General,* for Respondent.

SHARPSTEIN, J. :

The appellant was indicted for murder, and convicted of manslaughter. He moved upon a bill of exceptions for a new trial, which was denied, and the Court sentenced him to imprisonment in the State Prison for the term of seven years.

There was evidence introduced on the trial which tended to prove that, thirty or forty minutes before the homicide, the deceased and the defendant, in their respective wagons, each accompanied by two other persons, met upon the highway in the vicinity of their homes. The deceased and his friends were in a covered wagon, the latter occupying the front seat, and the former sitting upon a seat in the rear of the wagon. There was a gun in the wagon, and when the two wagons were nearly abreast, the deceased got out of the wagon, seized the gun, and fired at the defendant, but did not hit him. The horses attached to the wagon in which the defendant was riding became frightened, and started to run. The defendant, however, managed to discharge a gun, which he had, twice at the deceased without effect.

The defendant and his party, of which his brother was one, returned to the latter's house and put up their team. The defendant, armed with a rifle, started to go in the direction of his own house by a route which would take him by the house of the deceased. The latter, soon afterward, with his friends, returned to his house, and drove into a corral, and while they were unharnessing his team, he was shot by the defendant, and expired before medical or surgical aid could reach him. There was some evidence of a hostile meeting of the defendant and the deceased on the highway only a few days before the occurrences above narrated, in which they assailed each other with other than deadly weapons. The defense endeavored at the trial to make it appear that the deceased had, on several occasions, in the presence of several persons, threatened to kill the defendant, and that those threats had been communicated to him by the persons who heard them. The defendant testified that, at the time of firing the fatal shot, he saw the deceased in the act, as he (defendant) construed it, of taking his gun from the wagon for the purpose of shooting at the defendant. Among the instructions which the Court gave to the jury was the following:

" If it appears to your entire satisfaction from all the evidence, beyond a reasonable doubt, that the alleged deceased (Ananias Niles) was shot from behind by the defendant, and that the defendant at the time of the shooting was concealed behind a

fence, and that there were no words, demonstrations, or hostile acts at that immediate time made or committed by the deceased; that deceased was unconscious of the fact that defendant was so concealed until he was shot down; then it is immaterial what, if any, threats or demonstrations the deceased had made at any other time or place, for such threats or demonstrations—no matter what they were—would not constitute a defense, and would not make the act of the defendant either excusable or justifiable, but the defendant would be guilty of murder; and if the jury are entirely satisfied from all the evidence, beyond a reasonable doubt, that the facts of the case are as last above stated, then the jury will find the defendant guilty of murder, no matter whether the character of the defendant is good or bad."

This instruction is clearly erroneous. The Court instructs the jury, that if the defendant did all the acts therein enumerated, that then the defendant was guilty of murder. Whenever a Court attempts to give such an instruction, it should be very careful not to omit any essential element of the crime. The question of deliberation and intention are wholly ignored in this instruction. It is quite evident that the Court uses the word " concealed " as the synonym of " lying in wait." If the defendant concealed himself for the purpose of shooting the deceased unawares, then he was lying in wait, which is evidence of deliberation and intention. But a person might, while concealed, shoot another without committing the crime of murder; although there " were no words, demonstrations, or hostile acts at that immediate time made or committed by the deceased." If the deceased had shot at the defendant less than an hour before, and had made threats against his life, which had been communicated to him, it would not simply be a question whether the deceased was actually making a hostile demonstration at the time, but also whether the defendant in good faith and without fault or carelessness, entertained the belief that the deceased was about to execute his threat. For if the defendant, without his fault or carelessness, did so believe, he would not be guilty of murder, though it turned out that he was mistaken. In other words, whenever a man exercises his right of self-defense, he must be understood to act on the facts as they appear

to him. "And if without fault or carelessness he is misled concerning them, and defends himself correctly, according to what he supposes the facts to be, he is justifiable ; though they are in truth otherwise, and he really had no occasion for the extreme measure." (Bish. on Cr. Law. 305.) The instruction was not sufficiently comprehensive upon this point. Neither is it correct as an abstract proposition of law.

We have not discussed any other error for which the judgment should be reversed. But the exception to the foregoing instruction was well taken.

Judgment and order reversed, and cause remanded for a new trial.

THORNTON, J., and MYRICK, J., concurred.