[Crim. No. 2928. In Bank.—June 1, 1927.]

## THE PEOPLE, Respondent, v. MILLAN VUKICH, Appellant.

[1] CRIMINAL LAW — MURDER — EVIDENCE—CROSS-EXAMINATION.—In a prosecution for murder, wherein the plea is insanity and in which the evidence showed that the defendant had had trouble with the deceased in the matter of the collection of wages, there was no error in allowing the district attorney to cross-examine a deputy state labor commissioner from whom the defense on direct examination had elicited the substance of certain conversations between the witness and the defendant during the time that the defendant was endeavoring to enforce collection of his wages from the deceased, by asking the witness if the defendant had ever discussed with him any claim of the defendant against a certain other person, the prosecution being entitled to fully develop the conversation, and the evidence being permissible on the issue of insanity.

[2] ID.—ALLEGED MISCONDUCT OF DISTRICT ATTORNEY—CROSS-EXAMINATION OF DEFENDANT.—In such a case, the district attorney was not guilty of prejudicial misconduct in cross-examining the defendant to discover whether he had had any trouble with employers other than the deceased, where the question was answered in the negative, before objection, especially as the cross-examination was proper on the issue of insanity.

[3] ID.—ARGUMENT OF DISTRICT ATTORNEY—ALLEGED MISCONDUCT.— In this prosecution for murder it is held that there was nothing

prejudicial to the substantial rights of the defendant in the argument of the district attorney.

[4] ID.—INSTRUCTIONS.—The instructions in this case are held to be full and fair and there was no error in giving or refusing any of the instructions.

[5] ID.—EVIDENCE—CONVERSATION—CROSS-EXAMINATION—CONDUCT AND APPEARANCE OF DEFENDANT.—In a prosecution for murder in which the defense is insanity there is no error in cross-examining a witness for the defense for the purpose of developing an entire conversation referred to in the direct examination and to disclose the actions and conduct, appearance, and degree of understanding of the defendant at the time, as such matters are proper matters for cross-examination.

[6] ID.—EVIDENCE—REPUTATION OF DEFENDANT FOR PEACE AND QUIET—FOUNDATION.—In a prosecution for murder, assuming that the character of the deceased and his reputation and disposition for peace and quiet could be made an issue, under the facts, objection to evidence thereon was properly sustained where the necessary foundations were not laid.

[7] ID.—REJECTION OF LETTER FROM EVIDENCE—REASON—LACK OF ERROR.—In this prosecution for murder it is held that the court did not commit error in assigning the reasons which it did for the rejection of a certain letter from evidence, as the ruling of the court was correct in point of law, and the fact that valid reasons for the ruling were given in the presence of the jury could not have been prejudicial to the defendant.

[8] ID.—PENALTY—FUNCTION OF JURY.—In a prosecution for murder, where the evidence was sufficient to justify the jury in finding under the instructions of the court that the homicide committed by the defendant was "by lying in wait," under the statute the murder was of the first degree and the matter of fixing the penalty was exclusively the function of the jury.

---

(1) 40 Cyc., p. 2491, n. 16, p. 2501, n. 94.    (2) 17 C. J., p. 298, n. 22, p. 315, n. 77; 30 C. J., p. 222, n. 52.    (3) 17 C. J., p. 298, n. 21. (4) 17 C. J., p. 174, n. 59.    (5) 40 Cyc., p. 2491, n. 16, p. 2507, n. 16.    (6) 16 C. J., p. 865, n. 98.    (7) 16 C. J., p. 612, n. 86, p. 831, n. 74; 30 C. J., p. 363, n. 67.    (8) 30 C. J., p. 312, n. 42, p. 431, n. 66.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a motion for a new trial.    J. B. Landis, Judge Presiding.    Affirmed.

---

5. See 10 R. C. L. 935; 10 Cal. Jur. 821.
6. See 10 R. C. L. 953, 954; 10 Cal. Jur. 839.
7. See 13 Cal. Jur. 744.

The facts are stated in the opinion of the court.

Geo. E. Foote and W. J. Burns for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SHENK, J.—The defendant was charged with the murder of one Richard T. Stone on September 27, 1925, in Placer County. He was convicted and sentenced to suffer the extreme penalty. He has appealed from the judgment and an order denying his motion for a new trial. The facts leading up to and attendant upon the killing are briefly as follows: The deceased had charge, management, and control of the Alta Lumber Company's sawmill located on the Baker ranch, on the Foresthill Divide, in said county. The defendant, a Montenegrin, about thirty-six years of age at the time of the trial, was sent to the Baker ranch, for employment as a millhand from an employment office in Sacramento, in June, 1923. He worked at miscellaneous jobs on the ranch and about the mill until September, 1923, when, following a controversy and a personal encounter with Stone, he was discharged and ordered off the premises. The defendant thereupon demanded the wages due him and was given a time-check for $161, which he claimed was sixty-five cents short. The time-check was directed to a bank at Roseville. He immediately went to the district attorney at Auburn and complained about an alleged attack on him by Stone, and also about not receiving cash for his wages. He was informed by the district attorney that nothing would then be done with reference to the matter of the fight, but that if he were not paid his wages by September 6th proceedings would be commenced against Stone. The defendant went to the bank at Roseville, where payment on his time-check was refused on the ground that there were no funds in the bank to pay the same. He again consulted the district attorney, proceedings were taken against Stone in the justice's court, and he was fined $100; but the defendant did not collect his wages. He then consulted attorneys with a view to obtaining a money judgment, but without avail. He sought relief through the office of the labor commissioner at Sacramento and the district attorney

of the city and county of San Francisco. He sought the aid of the attorney-general of the state and endeavored to enlist the assistance of the Governor in the redress of what he conceived to be a great wrong done him by Stone. He worked intermittently and traveled about during 1924 and 1925, at times resuming his efforts to collect his wages from Stone. He finally decided to take the law into his own hands, as he expressed it. He went to Reno, purchased a rifle, a pistol, a dirk, and ammunition, at a cost of about $50, and made his way to the Baker ranch, arriving there about 2 o'clock of the morning of September 27, 1925. He first went into the bunkhouse and then into the boiler-room of the mill, where he remained until between 6 and 7 o'clock, at which time he heard voices emanating from the Stone residence and concluded that Stone was in the house. He then went into the bathhouse, which adjoined the sawmill, and was about one hundred yards distant from the residence. He cut gaps in the cracks in the bathhouse in such manner that he could see through the same without being seen. Stone was living with his wife in the residence and a Mrs. Horten from San Francisco was visiting them. At about 10 o'clock the three came out of the house for the general purpose of looking over the mill and lumber-yard, and for the more particular purpose of having Stone point out to Mrs. Stone certain lumber which was to be sold during a contemplated absence of Stone. The three walked across the lower part of the yard, conversing as they went. As they approached the mill Stone stepped up to and upon a sill and turned and reached out his hand to assist Mrs. Stone. As he turned he was facing the bathhouse, where the defendant was in hiding. At that moment the defendant fired. The bullet passed through Stone's heart and he died almost immediately. The defendant fired another shot and emerged from the bathhouse, carrying his rifle before him, where he was in plain view of Mrs. Horten.

The defendant left the scene of the shooting, went into the mountains, traveled about for some time in such manner as to indicate beyond question that he was endeavoring to avoid apprehension, and finally found his way into Mexico. In returning to the United States he was arrested at the border and brought back to Auburn for trial. At Yuma, on October 23, 1925, the defendant made a lengthy state-

ment, which was taken down in shorthand, transcribed and signed by him on the next day, in which the killing of Stone under the circumstances above related was admitted. A second and similar statement, reported in shorthand and transcribed, was made by the defendant after his arrival at Auburn on October 26, 1925. These statements were received in evidence.

The defense was insanity. The jury found the plea unsustained. An examination of the evidence discloses that there was abundant evidence to sustain the verdict. In fact, the defendant does not claim that the evidence was insufficient to sustain the verdict rejecting his plea of insanity and finding him guilty of murder in the first degree.

A reversal of the jugment is sought upon three grounds: (1) Alleged prejudicial misconduct on the part of the district attorney which prevented the defendant from having a fair trial; (2) prejudicial misdirection of the jury by the court in matters of law in its instructions; and (3) certain alleged prejudicial errors by the court in its rulings upon the admission and rejection of evidence and in alleged comments on certain evidence.

[1] In support of the first contention it is urged that the district attorney violated the substantial rights of the defendant in the cross-examination of the defendant's witness Arthur L. Johnson. In the direct examination of this witness the defense had elicited the substance of certain conversations between the witness, who was a deputy state labor commissioner, and the defendant during the time that the defendant was endeavoring to enforce collection of his wages. On cross-examination the district attorney endeavored to draw from the witness more of the conversation by asking him if the defendant had ever discussed with him any claim of the defendant against a Doctor Galen. The court overruled the defendant's objection to the question on the ground that the conversation alluded to in the direct examination could be fully developed on cross-examination. The witness answered that the defendant had made complaint of his inability to collect $52 from Dr. Galen as wages; that the doctor owed him that amount but was willing to pay him only $48.50, or $3.50 less than his claim. When the witness stated to the defendant that the small difference did not seem to be of sufficient consequence to

justify the office of the labor commissioner in intervening under the circumstances shown, the defendant became abusive and criticised the office of the labor commissioner for not taking action to collect the full claim. We find no error in this cross-examination for two reasons. The first was correctly stated by the court when it overruled the objection; and, secondly, this cross-examination might properly be deemed relevant to the issue of insanity interposed by the defendant. [2] It is further urged that the district attorney was guilty of prejudicial misconduct in the cross-examination of the defendant wherein it was sought to discover whether the defendant had had any trouble with employers other than Stone. The question was asked: "Did you have a fight with the boss at Los Angeles and have to go to court about it?" Before an objection was interposed the defendant answered, "No, sir, not that I remember." Defendant's counsel then objected to the question and the court dismissed the objection by stating, "It has been answered in the negative." We think the cross-examination was proper on the issue of insanity, but in any event the question was answered in the negative, and we discover no injury to the defendant resulting therefrom.

[3] Further misconduct is charged against the district attorney in his closing argument. We have examined with care those portions of the argument especially objected to and find therein nothing prejudicial to the substantial rights of the defendant.

It is next insisted that the court incorporated in its instruction No. 1, relating to the duties of the jurors, the following language: "and unless you do your duty, laws may as well be stricken from the statute books," and that in doing so reversible error was committed. It is clear that counsel for defendant has proceeded on the mistaken assumption that such language was included in the instruction. We have examined fully the said instruction as it appears in the clerk's transcript and such language does not appear therein either in substance or effect nor in any instruction given by the court. The instruction as included in the record is a correct exposition of the law.

[4] Exception is also taken to that part of instruction No. 10 on reasonable doubt and the degree of proof required in criminal actions. Without quoting the same it may be

said that said instruction was in conformity with approved instructions on the subjects referred to. Numerous other instructions given or proposed by the prosecution and given as modified are set forth in the defendant's brief. These instructions have been carefully examined and we find no valid objection to any of them. Nor do we find error in the refusal of the court to give certain designated instructions proposed by the defendant. The charge was full and fair and no legitimate criticism may be directed to any portion thereof.

[5] It is next contended that the court committed prejudicial error in rulings on the admissibility of evidence during the cross-examination of the defendant's witness Lionel B. Browne, wherein it was sought by the prosecution to develop the entire conversations referred to in the direct examination and to disclose the actions, conduct, appearance, and degree of understanding of the defendant at the time. These were proper matters of cross-examination. [6] Objection is also made to the rulings of the court in sustaining objections to certain questions propounded by counsel for the defendant on the direct examination of witnesses Pope, Burner, Loc Yen, and Jenkins, wherein the character, reputation, and disposition of the deceased for peace and quietude was attempted to be put in issue. No question of self-defense was involved in the case, but assuming that the character of the deceased in the respects referred to could nevertheless be made an issue under the facts disclosed by the record, still it appears that the objections to the questions were properly sustained for the reason that the necessary foundations for the questions had not been laid.

[7] Finally, it is contended that the court overstepped legal bounds in enlarging on the reasons for refusing to admit in evidence a certain letter dated September 29, 1925, addressed to the district attorney of Placer county and signed by Walter G. Mathewson, state labor commissioner, by his attorney and deputy, Arthur L. Johnson. This letter contained a list of the names of the men who had filed labor claims against the deceased. It also gave a general history of the activities of the defendant so far as known to the state labor commissioner and expressed certain conclusions concerning the mental status of the defendant which his counsel undoubtedly believed were favorable to the defend-

ant on the issue of insanity. The witness Johnson, the writer of the letter, was examined in chief on behalf of the defendant and testified to much that was set forth in the letter and to nothing at substantial variance with anything stated therein. Counsel for defendant demanded the production of this letter, whereupon the district attorney stated to the court that the letter was in his possession and would be produced upon the suggestion of the court that it was competent evidence. Undoubtedly the court then read the letter, as the remarks of the court in ruling upon the admissibility of the same plainly indicate. The ruling was adverse to the defendant, and later, in reviewing the reasons for the ruling, the court stated in part: " . . . as I understand the matter, a certain witness testified on the stand as to what he observed in relation to the defendant and as to what the defendant said to him in a certain conversation he had with the defendant; that from that he formed and expressed an opinion here as a witness for the defense; that it also appeared that he had written the same thing to some other person, . . . —written the same thing he had testified to. Now, of course, we can see, if that is permitted, the witness could bolster up his testimony by writing to a number of persons and calling them in and asking if they received such a letter from him, and that is, I understand, only corroboration, and in the second place not competent because, in fact self-serving or bolstering up his testimony given by the witness on the stand. If he had made some other statement on the stand other than what he wrote, on cross-examination it would be proper to confront him with the letter to contradict him." Objection is made to that portion of the court's statement to the effect that if a witness could write a letter to a third party concerning the facts in the case and could later use the letter as evidence the same would be no more than an attempt to bolster up his own testimony given on the stand, and would be self-serving and incompetent. It is insisted that the remarks of the court in sustaining the objections to the introduction of this letter in evidence were improper comments of the court on the evidence in the case. There is no merit in the objection, for the reason that the letter was not received in evidence and the jury was not apprised of its contents except as it might draw the conclusion that it contained

statements in substance the same as the testimony of the witness on the stand. The ruling of the court was correct in point of law, and the fact that valid reasons for the ruling were given in the presence of the jury clearly could not have been prejudicial to the defendant. Furthermore, the court was at pains to instruct the jury to disregard the arguments on the point and not to treat the same in anywise as evidence.

Without question the defendant was incensed and exasperated to a high degree because of his failure after persistent efforts to obtain payment of his wages from Stone, but the court correctly instructed the jury that such grievances would not justify the aggrieved party in taking the law into his own hands and destroying human life; that the laws of the land are conclusively presumed to afford protection against such grievances; that persons may not administer relief to themselves by killing those believed to have violated their rights; that civilized society could not exist for a great length of time if human life was subjected to the jeopardy which would necessarily follow if it were once understood that men might execute their own vengeance by killing their fellow-men for private grievances, either real or imaginary; that the laws of the land as well as the peace and good order of society demand that when human life is taken for the gratification of private malice or vengeance the punishment prescribed by law for the commission of intentional homicide shall be administered to the guilty parties. [8] The evidence was sufficient to justify the jury in finding under the instructions of the court that the homicide committed by the defendant was "by lying in wait" and as such was by statute made murder of the first degree (sec. 189, Pen. Code); and the matter of fixing the penalty was, of course, exclusively the function of the jury.

The judgment and order are affirmed.

Richards, J., Waste, C. J., Curtis, J., Preston, J., Langdon, J., and Seawell, J., concurred.