[Crim. No. 5375.   In Bank.   Sept. 18, 1953.]

## THE PEOPLE, Respondent, v. EVAN CHARLES THOMAS, Appellant.

Al Matthews and John Oliver for Appellant.

Edmund G. Brown, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHENK, J.—The defendant was found guilty of murder in the first degree without recommendation. The victim was Nina Marie Bice. A motion for a new trial was denied and the extreme penalty was imposed. On this appeal, automatically taken under Penal Code, section 1239(b), the sole contention of the defendant is that the court misdirected the jury by giving an improper instruction on "lying in wait," hereinafter quoted in full.

The defendant was charged by information in count I that on or about August 29, 1951, he wilfully, unlawfully, feloniously and with malice aforethought murdered Nina Marie Bice. In counts II, IV, VI, VIII, X and XII he was charged with the attempted murder of each of several persons he shot at but failed to kill. In counts III, V, VII, IX, XI, and XIII he was charged with assault with a deadly weapon on each of those same persons. The defendant pleaded not guilty and not guilty by reason of insanity to each of the 13 counts. At the commencement of the trial the prosecution moved for a severance of count I from all the other counts. The defense agreed to the severance and the motion was granted. Thereupon the defendant withdrew his plea of not guilty by reason of insanity as to count I. Following the conviction on count I the other counts were ordered off calendar.

The facts of this case are not in dispute. In the evening of April 15, 1952, the defendant paid a social call on a neighborhood woman in Los Angeles County. He left at approximately 10 p.m., and shortly thereafter a shot was fired through the front window of the woman's home, injuring no one. Upon questioning by the sheriff's deputies the following day, the defendant admitted he fired the shot. A stenographic statement was taken at this time. In the statement the defendant related the following additional shootings:

On August 27, 1951, he shot at his first victim, a woman waiting at a corner telephone booth at about 10:30 in the morning. The bullet entered below the left shoulder blade. Following surgery she recovered from the wound. On August 28, 1951, he shot through the front window of a home, injuring no one.

On August 29, 1951, between 10 and 10:30 p.m. he shot and

killed Mrs. Nina Marie Bice. She was sitting on a stool next to the counter of a small lunch stand located at 1021 Atlantic Boulevard in Los Angeles County. The defendant stated that he noticed her as he drove by on his way to work; that he drove down an alley and stopped at a distance of about 200 feet from the lunch counter; that he took a .22 caliber rifle from under the back seat of his car; that he shot once at the woman, trying to knock a coffee cup out of her hands; that he saw her slump over the counter, and that he started his car and drove past the lunch counter where the victim had been laid out on the ground. The bullet entered the deceased's right ear killing her immediately.

On October 16, 1951, at 8 o'clock in the morning, the defendant shot at an 11-year-old schoolgirl, standing on a corner waiting for a bus. The bullet shattered a bone in the girl's forearm.

On November 23, 1951, at about 9:30 in the morning the defendant shot at a woman working in her yard with her son and daughter and three of their friends. The bullet entered her right thigh and was removed by surgery.

On December 25, 1951, at about 10:30 in the evening the defendant shot through a window at a woman ironing in her home. The bullet entered her abdominal cavity and lodged in a position where it was too hazardous to be removed.

With the exception of the final shooting, the defendant stated that he was acquainted with none of the women at whom he shot or at whose homes he shot. He purchased the .22 caliber rifle, used in each instance, in July, 1951, and carried it under the rear seat of his automobile. In some cases he shot from the automobile, and in others from outside of it. The only reason given for the shootings was that in some of the cases he experienced a sexual satisfaction while in the commission of the act or shortly thereafter.

On April 17, 1952, a sworn statement was taken from the defendant in the office of the district attorney. The statement was substantially the same as that taken by the sheriff's deputies the previous day and recited the same facts, although in greater detail than above related. Again the defendant gave no motive, other than the sexual satisfaction he experienced.

At the trial the two statements made by the defendant were read into the record. The victims, with the exception of the deceased, testified as to the shootings and other witnesses testified as to the shooting of the deceased. There was ex-

pert testimony to the effect that the defendant, a married man, led a frustrated sexual life at home and the shootings were an outlet for his sexual drive in his particular case. Expert opinion as to the defendant's mental ability varied from "subnormal" to "above average." The only testimony given by the defendant was that he had been in an automobile accident in 1948 and was rendered unconscious for six hours, and that during the remainder of the year 1948 he suffered headaches. The court ruled that this did not open up to cross-examination the entire field of the defendant's conduct. The defendant was not examined in court as to the commission of the acts charged against him.

The defendant contends that because there is no proof that he had intent to kill, a properly instructed jury would have returned a verdict of murder of the second degree. Section 189 of the Penal Code reads as follows: "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree." The section purports to set forth the degree of a crime previously determined to be "murder." "Murder is the unlawful killing of a human being, with malice aforethought." (Pen. Code, § 187.)

The court correctly instructed the jury on murder by lying in wait as follows:

"Murder which is perpetrated by lying in wait is declared by our law to be murder of the first degree, and if you should find that the defendant committed that crime, you will have no choice but to designate the offense as murder in the first degree."

The defendant brings into question the further instruction of the court defining "lying in wait":

"The words 'lying in wait' do not refer to the position of the body of the person who commits a killing. There may be a 'lying in wait' within the meaning of the law where such person is sitting down, standing or to a degree moving about. The gist of 'lying in wait' is that the person places himself in a position where he is waiting and watching and concealed from the person killed with the intention of inflicting bodily injury upon such person or of killing such person. There is nothing in the law that requires that the 'lying in wait'

exist for or consume any particular period of time before the firing of a shot or other act which caused the death. It is only necessary that the act causing death be preceded by and the outgrowth of the 'lying in wait.'

"Where the killing is by 'lying in wait,' and the act causing death was intentional, it is murder of the first degree, whether the killing was intentional or unintentional, as in such case it is not necessary that there exist in the mind of the perpetrator an intent to kill."

The defendant contends that the instruction was improper because it permitted the jury to convict of first degree murder where there was no evidence of a specific intent to kill. But where a murder is shown to have been committed by 'lying in wait' a showing of intent is unnecessary to fix the degree. In *People* v. *Bernard,* 28 Cal.2d 207, it is stated at page 211 [169 P.2d 636]: ". . . the murderer who kills by torture or poison may intend only to inflict suffering, not death. Evidence of the means used might support an inference that the killing was willful, deliberate, and premeditated, but where the jury has found that the killing was by poison, lying in wait, or torture it is not their [the jury's] function to go farther and draw inferences as to the manner of the formation and carrying out of an intention to kill. In such a case the question which the statute (Pen. Code, § 189) answers affirmatively is not 'Is the killing willful, deliberate and premeditated?'; it is, 'Is the killing murder of the first degree?' Killings by the means or on the occasions under discussion are murders of the first degree because of the substantive statutory definition of the crime." (See, also, *People* v. *Tuthill,* 31 Cal.2d 92, 99 [187 P.2d 16].)

The defendant relies upon an excerpt from *People* v. *Howard* (1930), 211 Cal. 322, 329 [295 P. 333, 71 A.L.R. 1385], where it is stated: "To be murder of the first degree, under our statute, the killing must be premeditated except when done in the perpetration of certain felonies; that is to say, the unlawful killing must be accompanied with a deliberate and clear intent to take life." In that case the deceased died from a blow on the head received in the course of a struggle following an argument with the defendant. It was held that the evidence did not show that the murder was wilful and deliberate. The question of murder by lying in wait was not in issue, and the statement of the court cannot fairly be construed to mean that where a murder by lying in wait is committed it cannot be murder of the first degree unless accompanied by proof of a specific intent to kill.

■ As above noted the court instructed the jury that "Where the killing is by 'lying in wait,' and the act causing death was intentional, it is murder of the first degree whether the killing was intentional or unintentional. . . ." It is contended that this is not a complete statement of the law; that under such an instruction one could be convicted of murder of the first degree where by lying in wait he sought merely to play a prank upon the deceased but instead created circumstances which caused death, and that the instruction ignores the provisions of the Penal Code which presuppose that a "murder" as distinguished from a "killing" has been committed, in which event it is of the first degree if perpetrated by lying in wait.

It may be assumed that the instruction standing alone is not as exact as it might be. Still no prejudice to the defendant resulted therefrom. It was contained in a definition of the expression "lying in wait." Therein the court correctly set forth the physical aspects of the act. It made it sufficiently clear that the act of lying in wait alone did not constitute the crime but that when *murder* had been established and was found to have been committed by lying in wait as that act was defined in the instruction the law fixes the degree of the crime. Considering the instructions as a whole it is clear that when the court made reference to a "killing" it was reasonably understood by the members of the jury to be a killing which constituted murder. The court had fully and correctly instructed the jury on the distinction between first and second degree murder and on all aspects of the law applicable to the facts including intent and how it could be manifested and proved. It had instructed that "you are not to single out any certain sentence, or any individual point or instruction, and ignore the others, but you are to consider all the instructions as a whole, and are to regard each in the light of all the others."

The defendant was convicted on undisputed evidence. He had a full and a fair trial. No reason has been advanced which would justify a reversal.

The judgment and the order denying the motion for a new trial are affirmed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

TRAYNOR, J.—I concur, but wish to amplify the reasons for my concurrence.

Two basic questions are presented on this appeal: (1) Was

the instruction on lying in wait erroneous? (2) Was the evidence insufficient to warrant the giving of an instruction on lying in wait?

The instruction on lying in wait[1] was erroneous in stating, "Where the killing is by 'lying in wait', and the act causing death was intentional, it is murder of the first degree, whether the killing was intentional or unintentional, as in such case it is not necessary that there exist in the mind of the perpetrator an intent to kill."

A "killing" by means of lying in wait is not murder of the first degree unless it is first established that it is murder. Only then can the question arise whether it is murder of the first degree because perpetrated by lying in wait. Under the instruction given an unintentional killing that did not amount to murder would nevertheless be murder of the first degree. This error is fundamental.

The following statutory definitions of murder, malice aforethought, and first degree murder must first be carefully considered.

"Murder is the unlawful killing of a human being, with malice aforethought." (Pen. Code, § 187.)

"Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188.)

"All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under

---

[1] "The words 'lying in wait' do not refer to the position of the body of the person who commits a killing. There may be a 'lying in wait' within the meaning of the law where such person is sitting down, standing or to a degree moving about. The gist of 'lying in wait' is that the person place himself in a position where he is waiting and watching and concealed from the person killed with the intention of inflicting bodily injury upon such person or of killing such person. There is nothing in the law that requires that the 'lying in wait' exist for or consume any particular period of time before the firing of a shot or other act which caused the death. It is only necessary that the act causing death be preceded by and the outgrowth of the 'lying in wait.'

"Where the killing is by 'lying in wait,' and the act causing death was intentional, it is murder of the first degree, whether the killing was intentional or unintentional, as in such case it is not necessary that there exist in the mind of the perpetrator an intent to kill."

Section 288 [lewd or lascivious act against a child], is murder of the first degree; and all other kinds of murder are of the second degree.'' (Pen. Code, § 189.)

Section 189 does not state that a ''killing'' perpetrated by one of the enumerated means is murder of the first degree. It speaks only of ''murder'' that is so perpetrated. In *People v. Coefield,* 37 Cal.2d 865 [236 P.2d 570], the defendant, who had been convicted of murder of the first degree for a killing committed in the perpetration of a robbery, pointed out that ''murder'' is the grammatical antecedent of ''which'' in the clause ''which is committed in the perpetration or attempt to perpetrate . . . robbery,'' and contended that the killing was accidental and was therefore not with malice aforethought and was therefore not ''murder'' committed in the perpetration of a robbery, and accordingly was not murder of the first degree. We rejected this contention, holding not only that ''malice is shown by the nature of the attempted crime, and the law fixes upon the offender the intent which makes any killing in the perpetration of or attempt to perpetrate the robbery a murder of the first degree'' but that ''in such a case the jury had no option but to return a verdict of murder of the first degree, whether the killing was done intentionally or accidentally.'' (37 Cal.2d at 868, 869.) It is contended that since the poisoning or torturing of another or lying in wait to take him unawares involves substantial risk to human life, malice should also be found in the nature of such acts, and that a killing resulting therefrom should likewise be held to be murder of the first degree whether it was done intentionally or accidentally. Section 189, however, when read in the light of other sections of the Penal Code and the decisions of this court, is not amenable to that construction.

By the use of the phrase ''or any *other* kind of willful, deliberate, and premeditated killing'' (italics added) following the phrase ''All murder which is perpetrated by means of poison, or lying in wait, torture,'' the Legislature identified murder committed by any of the enumerated means as a ''kind of'' willful, deliberate, and premeditated killing. Ordinarily, to prove that a killing was willful, deliberate, and premeditated, evidence must be introduced from which the trier of fact can determine the state of mind of the defendant before he committed the act that resulted in his victim's death, that is, whether the killing resulted from a deliberate intention to take human life.

If the killing is murder within the meaning of Penal Code, sections 187 and 188, and is by one of the means enumerated in section 189, the use of such means makes the killing as a matter of law the equivalent of "a willful, deliberate, and premeditated killing." Since any question as to the defendant's willfulness, deliberation, and premeditation is taken from the trier of fact by force of the statute (*People* v. *Bernard*, 28 Cal.2d 207, 211 [169 P.2d 636] ; *People* v. *Murphy*, 1 Cal.2d 37, 41 [32 P.2d 635] ; see, also, the illuminating discussion in the early case of *Riley* v. *State* (1849), 28 Tenn. 646, 660-661), it bears emphasis that a "killing" by one of the three means enumerated in the statute is not the equivalent of a "willful, deliberate, and premeditated killing" unless it is first established that it is murder. Thus, if it is contended that a murder was committed by means of poison, it is not enough to show that a poison was administered and that a death resulted. If the poison was innocently given under the belief that it was a harmles drug and that no serious results would follow, there would be no malice, express or implied, and any resulting death would not be murder. (*People* v. *Milton*, 145 Cal. 169, 170-171 [78 P. 549].) If, however, the defendant administered poison to his victim for an evil purpose, so that malice aforethought is shown, it is no defense that he did not intend or expect the death of his victim. (*People* v. *Cobler*, 2 Cal.App.2d 375, 380 [37 P.2d 869] ; see *People* v. *Bernard, supra,* 28 Cal.2d 207, 211.) Similarly, in the case of a killing by torture, it is not enough to show that the killing was by a means that incidentally caused pain and suffering to the victim. (*People* v. *Bender,* 27 Cal.2d 164, 177-178 [163 P.2d 8].) It must be established that the defendant intended to "cause cruel suffering on the part of the object of the attack, either for the purpose of revenge, extortion, persuasion, or to satisfy some other untoward propensity." (*People* v. *Tubby*, 34 Cal.2d 72, 77 [207 P.2d 51] ; *People* v. *Daugherty*, 40 Cal.2d 876, 886 [256 P.2d 911] ; *People* v. *Martinez*, 38 Cal.2d 556, 561 [241 P.2d 224].) The defendant need not intend that his victim die as a result of the torture, since his intention to commit acts that involve a substantial risk to human life makes him guilty of first degree murder if a death results. (*People* v. *Tubby, supra,* 34 Cal. 2d 72, 77.)

When it is contended that a killing is murder of the first degree on the ground that it was committed by lying in wait, it must likewise first be established that the killing was

murder.[2] If the killing was not murder, it cannot be first degree murder, and it is immaterial that the defendant was lying in wait. Otherwise, absurd results might follow. Thus, a defendant might lie in wait to frighten a person. Unknown to defendant, that person might have a defective heart. His death from a heart attack as a result of the fright would not be murder. Again, a killing that unintentionally results from a fist fight is ordinarily involuntary manslaughter. (*People v. Le Grant*, 76 Cal.App.2d 148, 152 [172 P.2d 554]; *People v. Miller*, 114 Cal.App. 293, 301 [299 P. 742].) If the defendant lay in wait for his victim to engage in a fist fight with him and the victim dies as a result of the fight, that fact alone is not sufficient to make it the equivalent of a "willful, deliberate, and premeditated killing."

The instruction was also erroneous in stating that defendant was lying in wait if he was "waiting and watching and concealed from the person killed with the intention of inflicting bodily injury upon such person or of killing such person." When read with the last paragraph of the instruction, the foregoing language directed the jury to find defendant guilty of first degree murder if he intended "bodily injury." That definition falls short of the definition of murder in sections 187 and 188 of the Penal Code. It is true that murder may be committed without a specific intent to take human life if the killing is committed under circumstances that show an abandoned and malignant heart. To be so committed, however, the defendant must intend to commit acts that are likely to cause death and that show a conscious disregard for human life. (See *People v. Torres*, 94 Cal.App.2d 146, 150 [210 P.2d 324] [striking victim with knife]; *People v. Semone*, 140 Cal.App. 318, 324 [35 P.2d 379] [firing shotgun at trespassers]; *People v. Hubbard*, 64 Cal.App. 27, 37 [220 P. 315] [shooting with intent only to wound]; *People v. Stein*, 23 Cal.App. 108, 114 [137 P. 271] [firing shots at random into crowded dance hall].) As we have seen in considering the first error discussed above, a mere intent to inflict "bodily injury," amounting to an as-

---

[2]In the California cases involving murder by lying in wait, there was no contention that the killing was not murder; the only question was whether it was of the first or second degree. (*People v. Bernard*, 28 Cal.2d 207 [169 P.2d 636] [victim struck with deadly weapon]; *People v. Tuthill*, 31 Cal.2d 92 [187 P.2d 16] [victim shot with intent to kill]; *People v. Vukich*, 201 Cal. 290 [257 P. 46] [same]; *People v. Miles*, 55 Cal. 207 [same]; *People v. Gibson*, 92 Cal.App.2d 55 [206 P.2d 375] [victim stabbed].)

sault and battery at most, would not be enough to constitute murder if a killing resulted therefrom.

From the foregoing discussion it is apparent that the instruction on lying in wait was defective largely because the court failed to explain that murder must first be established before the question of lying in wait can arise. Without such an explanation the instruction was not only misleading but a gross misstatement of the law. We would be compelled to hold that the instruction was prejudicial and resulted in a miscarriage of justice, if there was evidence in the record from which a reasonable jury could conclude that the killing was not murder. There is no such evidence.

Defendant confessed that he shot at Mrs. Bice for sexual pleasure. In one statement he said that she ''had her coffee cup in her hand getting ready to drink her coffee which was what I was really aiming at . . . she had it right in front of her face.'' In another statement he said that he simply ''aimed at the woman in the stand, and pulled the trigger and drove off.'' He said that he knew he was a poor shot. Under these circumstances there can be no doubt that malice must be implied and that the killing was murder. An intent to kill is not necessary for murder. Malice is implied ''when the circumstances attending the killing show an abandoned and malignant heart.'' (Pen. Code, § 188.) That is shown when, as here, the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death. By his own admissions defendant's conduct demonstrates that he was not averse to endangering life for the sake of the sexual pleasure it gave him. Only a person with an ''abandoned and malignant heart'' could value the attainment of that pleasure more highly than human life. Since even if a proper instruction had been given, the jury could have come to no other conclusion than that the killing of Mrs. Bice was murder, the instruction did not result in a miscarriage of justice unless there was insufficient evidence to warrant the giving of any instruction on lying in wait.

We thus reach the crucial issue in this case: Was the evidence sufficient to warrant the giving of an instruction on lying in wait?

Lying in wait requires the elements of waiting, watching, and concealment for the purpose of taking a victim unawares. (*People* v. *Tuthill,* 31 Cal.2d 92, 100-101 [187 P.2d 16]; *Barnards* v. *State,* 88 Tenn. 183, 227 [12 S.W. 431].) It

does not mean that the defendant's body must be in a lying position; it is immaterial whether he is lying, sitting, standing, or moving about, so long as the elements of waiting, watching, and concealment are all present for the purpose of taking the victim unawares. (*People* v. *Repke,* 103 Mich. 459, 468 [61 N.W. 861]; *State* v. *Walker,* 170 N.C. 716, 718 [86 S.E. 1055].) The defendant may either wait for his victim to come to his place of hiding or he may go to a hiding place near his victim and wait for a favorable moment to murder him. (*People* v. *Repke, supra,* 103 Mich. 459, 468.)

The duration of the waiting, watching, and concealment necessary to constitute lying in wait cannot be arbitrarily fixed in units of time, just as the time necessary for the ordinary willful, deliberate, and premeditated killing cannot be so fixed. There must, however, be substantial evidence of a long enough period of waiting and watching in concealment to show a state of mind equivalent to premeditation and deliberation before the court can properly give an instruction on lying in wait. It is now settled that a mere specific intent to kill is not enough to constitute first degree murder under the classification of "any other kind of willful, deliberate, and premeditated killing," and that there must be substantial evidence that the intent to kill was arrived at as a result of premeditation and deliberation. (*People* v. *Holt,* 25 Cal.2d 59, 90-91 [152 P.2d 21]; *People* v. *Thomas,* 25 Cal.2d 880, 901 [156 P.2d 7]; *People* v. *Honeycutt,* 29 Cal.2d 52, 61 [172 P.2d 698]; *People* v. *Valentine,* 28 Cal.2d 121, 131 [169 P.2d 1].) If it is claimed that the murder was by one of the means enumerated in section 189, there must also be substantial evidence of the use of such means. Thus in the case of murder by lying in wait it is not enough that the victim be unaware of the presence of his assailant until the fatal wound is inflicted. It is also necessary that there be substantial evidence of the elements of waiting and watching. Otherwise a killing that was the result of a rash impulse would be converted into first degree murder.

In my opinion if the only evidence in this case was that with respect to the murder of Mrs. Bice, it would not be sufficient to sustain a finding of murder by means of lying in wait. Defendant saw deceased, a stranger to him, as he drove by in his automobile. He then drove around the block and parked in an alley in a position from which he could shoot at her. Standing alone, this evidence supplies no clue

as to whether defendant was waiting and watching for an opportunity to shoot at any victim who might present herself, or formed the intent to shoot only after the opportunity presented itself. Moreover, the fact that after seeing his victim, he drove round the block and parked in a position from which he could shoot, is not, when considered by itself, evidence of lying in wait. His victim was then at hand. He did not drive round the block into the alley to watch and wait for her but only to enable him to shoot her. Any delay in doing so after he had located his victim in an exposed position would not contribute to his success in executing his crime, but only increase the possibility that his victim might escape by moving from the area of danger. Thus unless defendant was watching and waiting for his victim before he came upon her, the murder was not committed by means of lying in wait.

The shooting of Mrs. Bice was not an isolated incident. On six other occasions defendant shot at women under similar circumstances. He carried his rifle with him in his automobile. His only motive for the shootings was sexual gratification. From this evidence the jury could reasonably infer that defendant drove about the city waiting and watching for whatever victims might present themselves. They could infer that he was waiting and watching for a victim on the night when he murdered decedent. Since in addition the murder was committed from a position of concealment, all of the elements necessary to constitute murder committed by means of lying in wait were present, and it was not error to present that theory to the jury.

Edmonds, J., concurred.

SCHAUER, J.—I dissent.

Excepting his final conclusions, I agree with and adopt Justice Traynor's discussion and statement of the law as expressed in his concurring opinion. I do not agree that the evidence shows murder by lying in wait.

Furthermore, even if we accept the theory of lying in wait advanced in Justice Traynor's opinion, I do not believe the judgment of first degree murder can properly be sustained. It should not be sustained because no instruction so defining lying in wait was given to the jury and the record therefore fails to show—indeed it indicates the contrary—that the jury

ever passed on the issues and found the facts essential to support the verdict on the theory described.

The evidence is ample to establish murder in the second degree and in my view both the law and justice would be better served by reducing the judgment of conviction to murder of the second degree and, as so reduced, affirming it.

CARTER, J.—I dissent.

I cannot agree that the evidence is sufficient to support a judgment of murder of the first degree. The judgment cannot be sustained on the theory of lying in wait as the evidence falls far short of establishing this ground and the jury was not instructed on the law applicable thereto. The evidence is sufficient to support a judgment of murder of the second degree and I would modify the judgment accordingly and affirm it as so modified.

Appellant's petition for a rehearing was denied October 15, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.