LIU, J., Concurring.
I write separately to comment on the relevant standard for implied malice, which is statutorily defined in relevant part as “when the circumstances attending the killing show an abandoned and malignant heart.” (Pen. Code, § 188.)
We have previously acknowledged two lines of decisions that attempt to delineate the objective and subjective components of implied malice. The first derives from Justice Traynor’s concurring opinion in People v. Thomas (1953) 41 Cal.2d 470 [261 P.2d 1] (Thomas), which said implied malice is shown when “the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death.” (Id. at p. 480 (conc. opn. of Traynor, J.).) The second line derives from People v. Phillips (1966) 64 Cal.2d 574 [51 Cal.Rptr. 225, 414 P.2d 353] (Phillips) (overruled on another ground in People v. Flood (1998) 18 Cal.4th 470, 490, fn. 12 [76 Cal.Rptr.2d 180, 957 P.2d 869]), which described implied malice murder as a “ ‘killing [which] proximately resulted from an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.’ ” (Phillips, supra, 64 Cal.2d at p. 587.)
Our prior cases have cited both of these tests, and we have held “that the two definitions of implied malice which had evolved from the foregoing cases actually articulated one and the same standard.” (People v. Nieto Benitez (1992) 4 Cal.4th 91, 104 [13 Cal.Rptr.2d 864, 840 P.2d 969]; see also People v. Knoller (2007) 41 Cal.4th 139, 152 [59 Cal.Rptr.3d 157, 158 P.3d 731] (Knoller); People v. Dellinger (1989) 49 Cal.3d 1212, 1219 [264 Cal.Rptr. 841, 783 P.2d 200]; People v. Watson (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].) Although we have suggested that the Phillips formulation of the subjective component of implied malice (“conscious disregard for life”) is preferable to the Thomas formulation (“wanton disregard for human life”) for purposes of instructing a jury (see Dellinger, supra, 49 Cal.3d at p. 1221), *513 we have never disavowed the Thomas formulation of implied malice, particularly with respect to the objective component. (See Knoller, supra, 41 Cal.4th at p. 157 [discussing objective test under Thomas].)
Under Thomas, the objective component of implied malice requires “an act that involves a high degree of probability that it will result in death.” (Thomas, supra, 41 Cal.2d at p. 480 (conc. opn. of Traynor, J.).) This test recognizes that the ultimate inquiry involves a determination of probability: Although an act that will certainly lead to death is not required, the probability of death from the act must be more than remote or merely possible. The Thomas test strikes that balance by requiring a “high degree of probability” of death.
The Court of Appeal, citing Thomas’ s formulation of the objective component, found that under the circumstances here, defendant’s single punch did not involve a “high degree of probability” that the victim would die rather than simply suffer serious bodily injury. In the context of battery, the Legislature has defined “serious bodily injury” to mean “a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement.” (Pen. Code, § 243, subd. (f)(4).) In this case, the pathologist who performed the autopsy saw no bruising or other injury on Kauanui’s face, and she could not tell “which side of his face [he was] punched on.” Other than the skull fracture, the pathologist described the victim’s injuries as “medically insignificant” and “medically trivial.” There is no question the victim’s skull hit the pavement with lethal force, but it is questionable whether there was a “high degree of probability” that defendant’s single punch would produce that unfortunate result.
Today’s opinion does not mention Thomas’s formulation of the objective component. The court cites only the Phillips formulation in “find[ing] sufficient evidence that the manner of the assault and the circumstances under which it was made rendered the natural consequences of defendant’s conduct dangerous to life.” (Maj. opn., ante, at p. 508; see id. at p. 510 [“the jury could reasonably find that defendant’s act of violence was predictably dangerous to human life”].) The court’s omission of the Thomas formulation continues the erosion of that test that began in the context of the second degree felony-murder rule. In People v. Patterson (1989) 49 Cal.3d 615 [262 Cal.Rptr. 195, 778 P.2d 549], we adopted the Thomas formulation as the relevant inquiry in deciding whether an offense constituted an “ ‘inherently dangerous felony’ ” upon which second degree felony-murder liability could be predicated. (Id. at p. 627.) We applied that test in People v. Hansen (1994) 9 Cal.4th 300 [36 Cal.Rptr.2d 609, 885 P.2d 1022] in determining that shooting at an inhabited dwelling “involves a high probability that death will *514 result and therefore is an inherently dangerous felony ... for purposes of the second degree felony-murder doctrine.” (Id. at p. 309.) However, our later second degree felony-murder cases have omitted the Thomas test, even as they continued to cite Patterson favorably. (See People v. Chun (2009) 45 Cal.4th 1172, 1182 [91 Cal.Rptr.3d 106, 203 P.3d 425] [inherently dangerous felony is “ ‘ “an act, the natural consequences of which are dangerous to life” [citation]’ ”], citing Patterson, 49 Cal.3d at p. 626; see People v. Howard (2005) 34 Cal.4th 1129, 1135 [23 Cal.Rptr.3d 306, 104 P.3d 107] [inherently dangerous felony is one that by its nature involves a “ ‘substantial risk that someone will be killed’ ”], quoting People v. Burroughs (1984) 35 Cal.3d 824, 833 [201 Cal.Rptr. 319, 678 P.2d 894].)
Because we have said that the Thomas and Phillips formulations are equivalent (see Knoller, supra, 41 Cal.4th at p. 152), the court is not compelled by precedent to mention Thomas. However, by omitting the Thomas test when defendant and the Court of Appeal have clearly relied on it, today’s opinion suggests (but does not hold) that the Phillips formulation matters in a close case such as this. If Thomas's “high degree of probability” test is to become disfavored in our doctrine, I prefer we consider and resolve the issue explicitly—if not in this case, then in a future case—instead of leaving it to mere implication. Since the issue is not specifically considered here, I express no view on Thomas's continued validity.
The Phillips formulation still requires some probabilistic assessment of when an act becomes sufficiently “dangerous” to life. In Knoller, we said that the subjective component of the Phillips test, which requires “conscious disregard of the danger to human life,” is not satisfied by “conscious disregard of the risk of serious bodily injury.” (Knoller, supra, 41 Cal.4th at p. 156.) Because Phillips uses the same “dangerous to life” nomenclature in stating the objective component of implied malice, an act “dangerous to life” must be one that presents more than a risk of serious bodily injury. For substantially the reasons stated by the court’s opinion, I agree the circumstances here fall just within the outer bounds of conduct sufficiently dangerous to satisfy the Phillips test of “ ‘an act, the natural consequences of which are dangerous to life.’ ” (Phillips, supra, 64 Cal.2d at p. 587.)