Filed 7/7/25  P. v. Castro CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANGEL CASTRO CASTRO,<br><br>    Defendant and Appellant.</td><td>H051479<br>(Monterey County<br> Super. Ct. No. 22CR002763)</td></tr>
</table>

A jury convicted defendant Angel Castro Castro of implied malice murder (Pen. Code,[1] § 187, subd. (a); count 1), gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 2), driving under the influence (DUI) of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 3) and hit and run resulting in injury (*id.*, § 20001, subd. (a); count 4) for an incident in which he drove while intoxicated and killed Manuel Garcia.  The trial court sentenced Castro to two years on count 4 plus 15 years to life in prison on count 1 and stayed the sentences on counts 2 and 3 pursuant to section 654.

---

[1] All further unspecified statutory references are to the Penal Code.

On appeal, Castro contends that the trial court erred by instructing the jury using CALCRIM No. 520 (CALCRIM 520) without modifying the instruction to reflect the language referencing a " 'high degree of probability' " of death from *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), issued one month prior to his trial.  In addition, Castro asserts that the court erred by allowing the jury to convict him on both count 2, gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), and count 3, driving under the influence causing injury (Veh. Code, § 23153, subd. (a)).

The Attorney General agrees that this court should strike the conviction for count 3 and the accompanying enhancement but contends that the trial court did not err in its instructions to the jury.

For the reasons stated below, we decide that the conviction for count 3 and the related enhancement must be vacated and remand for resentencing. We reject Castro's contention of instructional error.

## I.  FACTS AND PROCEDURAL BACKGROUND[2]

*A. Facts and Charges*

In the afternoon of March 21, 2022, Martin E.[3] was driving on highway 68 towards Salinas when he observed a dark van—later identified as Castro's green van—driving "uncomfortably close" behind him in the fast lane. Martin changed lanes to allow the van to pass.

After passing Martin's car, Castro's van struck Joel M.'s vehicle from behind while Joel was stopped at a light at the corner of Highway 68 and

---

[2] We set forth the relevant facts from the trial evidence in the light most favorable to the jury's verdict.  (*People v. Luo* (2017) 16 Cal.App.5th 663, 668, fn. 2; *People v. Campbell* (2020) 51 Cal.App.5th 463, 469.)

[3] We refer to nonlaw enforcement witnesses by first name and the first initial of their last name and subsequently by first name only to protect their privacy interests.  (See Cal. Rules of Court, rule 8.90(b)(10).)

Blanco Road. Castro struck Joel's vehicle "[v]ery hard," injuring Joel's right shoulder and propelling Joel's vehicle into another vehicle (the first collision). Martin witnessed the accident. Castro did not stop following the first collision but proceeded straight through the intersection and continued on Main Street in Salinas.

Martin followed Castro's van to obtain the vehicle's license plate number; Castro looked back at Martin. Castro stopped the van at a stop sign on Iverson Street, at which point Martin was able to take photographs of the van and its license plate.

Joshua S., an off-duty firefighter, observed Castro's van turning right from Iverson Street onto Blanco Road, heading westward. Joshua noted that Castro's van was damaged in the front and Castro was speeding. Joshua and Castro proceeded in the same direction on Blanco Road; Castro passed Joshua's vehicle. Castro drove erratically, weaving through the lanes on westbound Blanco Road, despite the lack of traffic. Joshua observed Castro frequently looking behind him.

As they approached West Alisal Street, Joshua saw Castro briefly look behind him and make a quick U-turn at the intersection of Blanco Road and West Alisal Street (in violation of a "no U-turn" sign). At the time Castro made the U-turn, Garcia was driving on his motorcycle eastbound on Blanco Road, approaching the intersection of Blanco Road and West Alisal Street. Castro's van turned into the path of Garcia's motorcycle. Garcia collided with Castro's van (the second collision).

When Joshua arrived at the scene approximately 30 seconds later, Castro's van was gone. Joshua attempted to render aid to Garcia, who was later pronounced dead at the scene.

3

That afternoon, Paul A. was traveling northbound on Hitchcock Road when he witnessed Castro's green van heading in his direction from his right. Paul observed that the van was traveling at a high rate of speed on a dirt road through a strawberry field. Paul was not sure if the van was going to stop, so he stopped, despite having the right of way. The van crossed in front of Paul and eventually stopped at the corner of Foster Road and Davis Road, near the Salinas ponds. A few minutes after the van stopped, Paul observed Castro exit the van, gather a few items, and start walking. When Paul noticed the stopped traffic and emergency vehicles on Blanco Road, he went over to the scene of the second collision. He asked California Highway Patrol Officer Eric Dutra if the police were looking for a green van and pointed Dutra in the direction of Castro's van.

Officer Dutra approached Castro, smelled the odor of alcohol on Castro, detained him, and notified California Highway Patrol Officer Matthew Babcock.[4] Another California Highway Patrol Officer, Anthony Rivera, also arrived at the scene and observed next to the road a 24-ounce can of beer about 100 feet away from where Castro was standing with Dutra. The beer can was still cool to the touch despite the warm day. Rivera later discovered an empty 24-ounce beer can inside Castro's van.

When Officer Babcock first spoke with Castro approximately one hour later, Babcock observed Castro "had red, watery eyes," smelled of alcohol, and had small pieces of glass on his clothing and skin and in his hair. Castro told Babcock that he had had three cans of beer between 3:15 and 3:30 p.m. Babcock conducted field sobriety tests on Castro and observed signs of

---

[4] When asked by Officer Dutra and, later, Officer Babcock whether he had been involved in the second collision and whether he had been driving the green van at some point, Castro replied in the negative.

impairment, including eye twitches and tremors, swaying while standing, slurred speech, and difficulty remembering and following directions. Babcock concluded from the field sobriety tests that Castro "was under the influence and not able to safely operate a motor vehicle."

Officer Babcock administered two preliminary alcohol screening (PAS) tests on Castro approximately two hours after the second collision. Castro's blood alcohol concentration on the first test was .084. It was .083 on the second test. After receiving the PAS test results, Babcock placed Castro under arrest.

On August 18, 2023, the Monterey County District Attorney filed a first amended information charging Castro with the murder of Garcia (§ 187, subd. (a); count 1), gross vehicular manslaughter of Garcia while intoxicated (§ 191.5, subd. (a); count 2), felony driving under the influence of alcohol and causing injury to Garcia (Veh. Code, § 23153, subd. (a); count 3), hit and run resulting in injury to Garcia (*id*., § 20001, subd. (a); count 4), and misdemeanor driving when his privilege had been suspended for a prior DUI conviction (*id*., § 14601.2, subd. (a); count 5). The amended information alleged with respect to count 2 that Castro had suffered a prior conviction for driving under the influence (§ 191.5, subd. (d)). For count 3, it alleged that Castro (1) personally inflicted great bodily injury upon Garcia (§ 12022.7, subd. (a)) and (2) had a prior conviction for driving under the influence within the past 10 years (Veh. Code, § 23560). For count 4, it alleged that Castro had fled the scene (*id*., § 20001, subd. (c)).

That same day, Castro pleaded not guilty to counts 1 through 4. He pleaded no contest to count 5 and admitted the prior conviction enhancements attached to count 2 (§ 191.5, subd. (d)) and count 3 (Veh. Code, § 23560).

On August 21, 2023, the district attorney orally amended the first amended information to reflect that the allegation that Castro fled the scene applied to count 2 rather than count 4. Castro's jury trial began that same day.

*B. Jury Instructions*

After the close of evidence and before counsel gave closing arguments, the trial court discussed the jury instructions with the district attorney and defense counsel. Neither the district attorney nor defense counsel objected to the wording of CALCRIM 520.

As given to Castro's jury, CALCRIM 520 stated, in pertinent part: "The defendant had *implied malice* if: [¶] 1. He intentionally committed the act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for life. [¶] . . . [¶] An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act or failure to act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence."

*C. Jury's Verdict and Castro's Sentence*

The jury returned guilty verdicts on counts 1 through 4 and found true the remaining enhancements on counts 2 and 3.

The trial court sentenced Castro to an aggregate term of 2 years plus 15 years to life in prison for counts 1 and 4. The court stayed the sentences on count 2 and the related prior conviction and fleeing the scene enhancements, and on count 3 and the related great bodily injury

enhancement pursuant to section 654. The court did not impose sentence on the prior conviction enhancement for count 3. Although the amended minute order for the sentencing hearing states the court sentenced Castro to 180 days in county jail on count 5, the court did not orally pronounce a sentence on count 5.

### D. Prior Criminal History

Prior to the incident underlying Castro's present convictions, Castro had incurred three prior convictions for driving under the influence. In January 2008, he pleaded guilty in Monterey County to driving under the influence (Veh. Code, § 23152, subd. (a)). The trial court advised Castro that his conviction could be alleged as a prior offense and that he could be charged with murder if he causes a person's death while driving under the influence (*id.*, § 23593).

In November 2010, in San Mateo County, Castro pleaded no contest to driving while having a .08 percent or higher blood alcohol level (Veh. Code, § 23152, subd. (b)) and admitted as true an allegation that he had a prior conviction for driving under the influence within 10 years. He signed an advisement of rights, waiver, and plea form in which he acknowledged he understood the following advisement: " 'You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder.' "

In May 2018, Castro entered a plea of no contest in Monterey County to two counts of driving under the influence (Veh. Code, § 23152, subds. (a) & (b)) and admitted enhancements for having a blood alcohol concentration of

7

0.15 percent or more by weight (*id.*, § 23578) and prior convictions for driving under the influence (*id.*, §§ 23152, 23540, 23546). The parties stipulated to the fact that, during the incident, Castro had a blood alcohol level of .16/.17 percent when he caused a collision that resulted in minor injuries. Castro acknowledged that he understood that driving under the influence "is extremely dangerous to human life" and he could be charged with murder if he causes a person's death while driving under the influence (*id.*, § 23593).

## II. DISCUSSION

Castro's challenge to the instruction on implied malice murder given at his trial relies on the California Supreme Court's June 29, 2023 decision in *Reyes* and a March 2024 revision to CALCRIM 520. Castro contends that the trial court erred in instructing the jury using CALCRIM 520 without incorporating into the instruction the language from the later-revised instruction that the jury must find that his act involved "a high degree of probability that death would result."[5] Castro maintains that he was prejudiced by the instructional error because the district attorney "presented no evidence of the high probability of death associated with driving under the influence."

In addition, Castro asserts that the trial court should have incorporated the "high degree of probability" language into both the second (actus reus) and third (mens rea) elements of the definition of implied malice in CALCRIM 520 because the same words in different parts of the instruction

---

[5] Castro argues that this issue is cognizable even though he did not raise this issue in the trial court. "The appellate court may . . . review any instruction given . . ., even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259; *People v. Thomas* (2023) 14 Cal.5th 327, 382.) On this basis, we consider the merits of Castro's claim despite his failure to raise it below.

should have the same definition. He maintains that this instructional error prejudiced him because the district attorney did not present evidence that he was told—and, thus, he could not have known—that the dangerousness of drunk driving "amounted to a high degree of probability that drunk driving would result in death." Castro argues that we should reverse his conviction for second degree implied malice murder on these grounds.

In addition, Castro argues that count 3, as a lesser included offense of count 2, and the related enhancement should be reversed.

The Attorney General maintains the trial court did not err in its instructions to the jury but concedes that count 3 and the attendant enhancement should be stricken from the judgment.

*A. CALCRIM 520*

1. <u>Applicable Law</u>

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Such malice "may be express or implied." (§ 188, subd. (a).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id.*, subd. (a)(2).)

"Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his [or her] conduct endangers the life of another and who acts with conscious disregard for life.' " ' " (*Reyes*, *supra*, 14 Cal.5th at p. 988, quoting *People v. Knoller* (2007) 41 Cal.4th 139, 143 (*Knoller*).) Thus, "implied-malice murder has a physical component: an act whose natural consequences are dangerous to life. And it has a mental component: defendant's deliberate performance of the act with conscious disregard for

9

life, knowing the act endangers another's life." (*In re Ferrell* (2023) 14 Cal.5th 593, 604 (*Ferrell*).)

In earlier implied malice murder jurisprudence, the California Supreme Court described the test for the physical component in two ways. First, as "an act that involves a high degree of probability that it will result in death." (*People v. Thomas* (1953) 41 Cal.2d 470, 480 (conc. opn. of Traynor, J.) (*Thomas*).) Later, as " 'an act, the natural consequences of which are dangerous to life.' " (*People v. Phillips* (1966) 64 Cal.2d 574, 587 (*Phillips*), overruled on another ground in *People v. Flood* (1998) 18 Cal.4th 470, 490, fn. 12 (*Flood*).)

In *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), the California Supreme Court "held that these two definitions of implied malice in essence articulated the same standard." (*Knoller, supra,* 41 Cal.4th at p. 152; see also *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 104 (*Nieto Benitez*); *People v. Dellinger* (1989) 49 Cal.3d 1212, 1218–1219 (*Dellinger*).) The *Watson* court stated that implied malice murder "has been committed when a person does ' " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " . . ..' [Citations.] *Phrased in a different way*, malice may be implied when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life." (*Watson,* at p. 300, italics added.)

"[T]he mental component of implied malice . . . requires a defendant to act with a conscious disregard for life, knowing his act endangers another's life." (*Ferrell, supra,* 14 Cal.5th at p. 597.) "The mental component calls for a subjective inquiry into a defendant's state of mind and requires 'a

10

determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard.' " (*Id*. at p. 604.)

"[M]alice may be implied when a person drives a motor vehicle under the influence of alcohol and kills someone." (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1005 (*Lagunas*); *Watson*, *supra*, 30 Cal.3d at pp. 300–301.) "Since *Watson*, appellate courts have upheld numerous murder convictions in cases where defendants have committed homicides while driving under the influence of alcohol. [Citations.] These opinions have generally relied on some or all of the factors that were present in *Watson*: '(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving.' [Citation.] However, 'courts have recognized that there is no particular formula for analysis of vehicular homicide cases, instead requiring a case-by-case approach.' " (*People v. Suazo* (2023) 95 Cal.App.5th 681, 692–693 (*Suazo*); accord *Lagunas*, at p. 1005.)

2. <u>Standard of Review</u>

We review a claim of instructional error de novo to ascertain whether the instruction accurately states the applicable law. (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 218.) In doing so, we consider the challenged instruction in the context of all the instructions given to the jury and the trial record. (*People v. Rivera* (2019) 7 Cal.5th 306, 326; *People v. Ortiz* (2023) 96 Cal.App.5th 768, 815–816.) " ' "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." ' " (*People v. Thomas*, *supra*, 14 Cal.5th at p. 382.) We assume that jurors are intelligent and capable of understanding the instructions. (*Ibid*.; *People v. Covarrubias* (2016) 1 Cal.5th 838, 915.)

11

If a trial court incorrectly instructs on an element of a charged offense, the applicable standard of prejudice is the *Chapman* standard. (*Neder v. United States* (1999) 527 U.S. 1, 9–10.) Under the *Chapman* standard, a federal constitutional error requires reversal unless the People show the error was "harmless beyond a reasonable doubt." (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *Flood, supra,* 18 Cal.4th at p. 475.)

### 3. Analysis

#### a. Actus Reus

Castro contends that the California Supreme Court's decision in *Reyes*, issued approximately one and one-half months prior to Castro's trial, defined an act that is " 'dangerous to life' " as used in implied malice murder as one that "involves a high degree of probability that it will result in death." His argument is based on the following sentence in *Reyes*: "To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[] a high degree of probability that it will result in death." ' " (Quoting *Reyes, supra,* 14 Cal.5th at p. 989.) He asserts that *Reyes* requires courts to instruct juries using an implied malice murder instruction that includes the "high degree of probability" of death language, and that, by failing to do so, the trial court committed prejudicial error.

Castro also relies on a March 2024 revision to CALCRIM 520. (*People v. Collins* (2025) 17 Cal.5th 293, 306, fn. 3.) Using the revised CALCRIM 520, the implied malice instruction given to Castro's jury would have read, in pertinent part (with revisions shown in italics): "The defendant had implied malice if: [¶] 1. He intentionally committed the act; [¶] 2. The natural and probable consequences of the act were dangerous to human life *in that the act involved a high degree of probability that it would result in death*; [¶] 3. At

12

the time he acted, he knew his act was dangerous to human life;  [¶]  AND [¶]  4. He deliberately acted with conscious disregard for human life."  (See CALCRIM 520 (March 2024 rev.).)

We are not persuaded that the trial court erred by omitting the italicized language from the instructions given to Castro's jury.

In *Reyes*, our Supreme Court neither modified the legal definition of implied malice murder nor overruled long-standing precedent that the *Thomas* and *Phillips* decisions articulate the same standard for implied malice murder.  Rather, the Supreme Court reviewed the defendant's petition for resentencing under section 1172.6 and decided there was insufficient evidence to support the conclusion that defendant was guilty of implied malice murder as a direct perpetrator.  (*Reyes*, *supra*, 14 Cal.5th at p. 989.) The court decided that the defendant's conduct in traveling to rival gang territory with other gang members was "merely . . . dangerous to life *in [a] vague or speculative sense*" (*ibid*., italics added) and did "not by itself give rise to a high degree of probability that death will result." (*Ibid*.)  The court did not state that the "dangerous to human life" standard was itself vague or speculative, only that the facts proffered to support such a finding were vague and speculative and, thus, insufficient to meet the existing standard. (*Id*. at p. 990.)

In *Reyes*, by citing *Knoller* to support the sentence on which Castro relies, the Supreme Court reiterated the long-held precedent that "under the objective component of implied malice, ' " 'dangerous to life' " ' *means the same thing as* a ' "high degree of probability that" ' the act in question ' "will result in death." ' "  (*Reyes*, *supra*, 14 Cal.5th at p. 989, quoting *Knoller*, *supra*, 41 Cal.4th at p. 152, italics added.)  The court in *Reyes* neither overturned nor otherwise questioned its prior decisions in which it held that

13

"dangerous to life" and "high degree of probability" state the same standard, such as in *Watson*, *Dellinger*, *Nieto Benitez*, and *Knoller*.

In *Reyes*, the Supreme Court neither criticized nor suggested any modifications to CALCRIM 520. In its only reference to the instruction, the court stated only that CALCRIM 520 "alone . . . does not encompass the elements of *aiding and abetting* implied malice murder as set out in [*People v.*] *Powell* [(2021) 63 Cal.App.5th 689]." (*Reyes*, *supra*, 14 Cal.5th at p. 991, italics added.) Further, " '[j]ury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent. They should not be cited as authority for legal principles.' " (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1157, fn. 7; *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.)

We decide that the trial court did not err in giving the then-current CALCRIM 520 instruction during Castro's trial.

b. Mens Rea

"For malice to be implied, a defendant must be subjectively aware that their acts or omissions endangered the life of" the victim. (*Collins*, *supra*, 17 Cal.5th at p. 321.) The CALCRIM instruction on implied malice's subjective knowledge element did not change post-*Reyes*. As currently worded, CALCRIM 520 instructs that, to satisfy the mental component of implied malice murder, the prosecution must demonstrate that the defendant knew the act he or she committed was "dangerous to human life." (CALCRIM 520 (March 2024 rev.).)

Castro maintains that the trial court should have incorporated the "high degree of probability" language into the mens rea component of the implied malice murder instruction provided to his jury because the mens reas component should match the revision to the actus reus component. He

14

further argues that the district attorney did not present any evidence he was aware that driving under the influence created "a high degree of probability" of death.

The California Supreme Court has long distinguished between the actus reus and mens rea components of implied malice murder by emphasizing that the former is an objective standard and the later a subjective one. (*Knoller*, *supra*, 41 Cal.4th at p. 157; see also *Collins*, *supra*, 17 Cal.5th at p. 322, citing *Reyes*, *supra*, 14 Cal.5th at p. 989.)

In *Knoller*, the California Supreme Court rejected the same argument Castro advances in this appeal regarding the subjective component of implied malice murder. The trial court in *Knoller* granted a new trial to a defendant who had been convicted of second degree murder on an implied malice theory. The trial court based its ruling on a finding of insufficient evidence that the defendant subjectively knew "her conduct involved *a high probability of resulting in the death of another*." (*Knoller*, *supra*, 41 Cal.4th at p. 142.) The Supreme Court ruled that the trial court had erred in granting a new trial on this basis because subjective knowledge of the high probability of death is not an element of implied malice. (*Id*. at p. 157.) The court reasoned that " 'high probability of death' " is part of the objective component of implied malice, not the subjective component. (*Ibid*.)

As discussed *ante* (pt. II.A.3.a.), the California Supreme Court's decision in *Reyes* did not overrule *Knoller*. Indeed, post-*Reyes*, the court characterized the " ' " 'high degree of probability that [the act] will result in death' " ' element" as "objective." (*Collins*, *supra*, 17 Cal.5th at p. 322.) We therefore decide the trial court did not err in its instruction on the mental component of implied malice murder.

15

### c. Harmless Error

Even if the trial court erred in failing to modify the then-current CALCRIM 520 instruction in the manner Castro now suggests, we decide that any such error was harmless. (*Chapman*, *supra*, 386 U.S. at p. 24.)

Castro admitted to having drunk three cans of beer before driving and he had blood alcohol concentration levels of .084 and .083 two hours later. He drove erratically, quickly, and aggressively, first tailgating Martin's vehicle, then crashing "[v]ery hard" into Joel's vehicle and causing it to hit a third vehicle, and weaving between the two westbound Blanco Road lanes before making an illegal U-turn into oncoming traffic on eastbound Blanco Road and causing the collision with Garcia.

Castro had been convicted three times before for driving under the influence of alcohol. In each instance, the trial court informed him, and he acknowledged that driving under the influence is dangerous to human life, and that if he continued to drive under the influence and someone was killed as a result, he could be charged with murder. Evidence of prior reckless and/or drunk driving tends to establish a "defendant's *knowledge*—gained in the course of the prior misconduct—of the natural consequences, dangerous to life, of the reckless operation of a motor vehicle, and of his persistence in that behavior, thus evidencing a conscious disregard for the lives of others on the road." (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 111–112.)

Considering the challenged instruction in the context of the trial record and given the presence of all the factors identified in *Watson*, we are convinced beyond a reasonable doubt that the jury would have found Castro guilty of implied malice murder despite the purported error. (See *Suazo*, *supra*, 95 Cal.App.5th at pp. 692–693; *Lagunas*, *supra*, 97 Cal.App.5th at p. 1005.)

16

*B. Lesser-Included Offense Conviction*

A person can generally be convicted of more than one crime arising out of the same act or course of conduct, although not punished for both. (*People v. Reed* (2006) 38 Cal.4th 1224, 1226; see §§ 954, 654.) However, "[a] judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' " (*Reed*, at p. 1227; see also *People v. Ramirez* (2009) 45 Cal.4th 980, 984.) If a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed. (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

The jury convicted Castro of violating Vehicle Code section 23153, subdivision (a) (count 3) and section 191.5, subdivision (a) (count 2), both in connection with the death of Garcia. Castro argues and the Attorney General concedes that Vehicle Code section 23153, subdivision (a) is a lesser-included offense of section 191.5, subdivision (a). The parties agree that this court should strike the conviction for count 3 and the attendant enhancements under section 12022.7, subdivision (a) and Vehicle Code section 23560.

In *People v. Miranda* (1994) 21 Cal.App.4th 1464, a different panel of this court held that a conviction of Vehicle Code section 23153, subdivision (a) is a necessarily included offense of section 191.5, subdivision (a) when the same person is the victim of both crimes. (*Miranda*, at p. 1468.) We therefore direct the trial court to vacate Castro's conviction for count 3 and the accompanying enhancements.

*C. Additional Errors in Sentencing and Abstract of Judgment*

In addition, although not raised by either party, we observe that the trial court erred by failing to orally pronounce sentence on count 5. A court has the duty to pronounce sentence on every conviction, whether it is for a felony or a misdemeanor. (*People v. Codinha* (2023) 92 Cal.App.5th 976, 994.) Although the court could decide to give Castro credit on count 5 for time he has already spent in custody, it should "first . . . pronounce a proper sentence on" that count. (*Ibid.*) " 'When the mistake [in failing to pronounce sentence on a count] is discovered while the defendant's appeal is pending, the appellate court should remand the case for a proper sentence.' " (*Ibid.*) We thus remand the matter to the trial court to sentence Castro on count 5.

In addition, Castro's felony abstract of judgment does not include the prior conviction and fleeing the scene enhancements attached to count 2 (§ 191.5, subd. (d); Veh. Code, § 20001, subd. (c)). On remand, the trial court should correct the abstract of judgment to reflect the prior conviction enhancement on count 2 that Castro admitted (§ 191.5, subd. (d)) and the jury's true finding on the allegation that Castro fled the scene (Veh. Code, § 20001, subd. (c)).

## III.  DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to (1) impose sentence on count 5 (Veh. Code, § 14601.2, subd. (a)); and (2) vacate Castro's conviction on count 3, driving under the influence causing injury (Veh. Code, § 23153, subd. (a)), and the accompanying great bodily injury enhancement (Pen. Code, § 12022.7, subd. (a)) and prior conviction enhancement (Veh. Code, § 23560). The trial court is ordered to prepare an amended abstract of judgment reflecting these modifications and including the enhancements on count 2 that were admitted or found to be

true (Pen. Code, § 191.5, subd. (d); Veh. Code, § 20001, subd. (c)), and to forward a certified copy of the amended felony abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, Castro's convictions are affirmed.

_____
Danner, Acting P. J.

WE CONCUR:

_____
Wilson, J.

_____
Bromberg, J.

**H051479**
***People v. Castro***